FILED
2024 Mar-18 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**DIANA WEBB, on behalf of herself and all others similarly situated,**

**Plaintiff,**

**v.**

**WALMART INC.,**

**Defendant.**

**Case No.: 5:22-cv-00044-MHH**

**MEMORANDUM OPINION**

This case concerns uniforms that Walmart allegedly requires truck drivers like Diana Webb to wear. Ms. Webb contends that Walmart supplies uniforms to company truck drivers free of charge as a benefit of employment, but the uniforms for which Walmart pays are designed for and properly fit only male truck drivers. Ms. Webb has asserted a Title VII claim and a state-law unjust enrichment claim against Walmart for herself and for other female truck drivers who either must wear ill-fitting male uniform pants or pay for their own pants as a condition of employment with Walmart. Walmart has asked the Court to dismiss Ms. Webb's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6). A district court must consider Rule 12(b)(6) in conjunction with Rule 8. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to meet the requirements of Rule 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court must accept as true the factual allegations in the complaint and construe the factual allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, in evaluating Walmart's

motion to dismiss, the Court views the factual allegations in the amended complaint and the inferences from those allegations in the light most favorable to Ms. Webb.

**I.**

In her amended complaint, Ms. Webb alleges that Walmart historically has hired more male truck drivers than female truck drivers. (Doc. 19, p. 3, ¶ 11). Walmart hires company truck drivers to deliver products from its 75 distribution centers to its retail locations nationwide. (Doc. 19, p. 3, ¶¶ 10, 12). Ms. Webb asserts that Walmart hired her as a driver in 2020 and that she is one of approximately 200 female Walmart truckdrivers nationwide. (Doc. 19, pp. 5–6, ¶¶ 23, 29).

By contract, Cintas, Aramark, and Unifirst supply uniforms for Walmart truck drivers. The uniforms consist of pants, a shirt, and a jacket for cold weather. (Doc. 19, pp. 3–4, ¶¶ 15, 17). As a benefit of employment with the company, Walmart pays for the uniforms that Cintas, Aramark, and Unifirst supply, and Walmart pays to launder the clothing weekly. (Doc. 19, pp. 4, 6, ¶¶ 18–19, 34). Ms. Webb alleges that Walmart requires its truck drivers to wear uniforms, but "it is impossible" for her and for other female drivers "to wear the men's pants and other clothing items, like jackets, provided by Walmart specifically made to fit only male employees due to anatomical differences between the sexes." (Doc. 19, pp. 4–5, ¶¶ 22, 30; *see also* Doc. 19, p. 6, ¶ 31). Ms. Webb asserts that to comply with Walmart's uniform policy

and maintain employment with the company, she and other female drivers must buy their own pants and pay to launder them; Walmart's male truck drivers have not incurred the same expenses. (Doc. 19, pp. 5–7, ¶¶ 23, 25, 32, 33, 37). Ms. Webb reports that she has had to buy "multiple pairs of female pants and shorts to wear for work." (Doc. 19, p. 7, ¶ 37). If a driver does not wear a Walmart uniform, the driver faces immediate termination. (Doc. 19, p. 4, ¶ 17).

Ms. Webb has complained to her supervisors and to Walmart's human resources department that Walmart's practice of providing uniform pants that fit only men is a form of sex discrimination, and she has requested reimbursement for the out-of-pocket expenses for pants and shorts she has bought to wear at work. (Doc. 19, pp. 6–7, ¶¶ 35–38, 40). Ms. Webb asserts that she "was told that if she was reimbursed" for buying women's pants and shorts for work, "Walmart would have to reimburse *all* female drivers," and Walmart "declined to do so." (Doc. 19, p. 7, ¶ 38) (italics in Doc. 19).

For herself and for a nationwide class of female drivers, Ms. Webb seeks equitable relief and monetary damages for economic losses female drivers have incurred because of Walmart's uniform policy. To secure this relief, Ms. Webb asserts against Walmart a Title VII claim and an unjust enrichment claim. (Doc. 19, pp. 11–13).

**III.**

Walmart's motion to dismiss proceeds from the premise that Ms. Webb's Title VII claim most likely is a disparate treatment claim. Walmart argues that Ms. Webb cannot establish a *prima facie* case of disparate treatment because she has not alleged that she was subjected to an adverse employment action. (Doc. 18, pp. 3–4). Walmart also asserts: "To the extent Plaintiff's complaint asserts a Title VII claim under a disparate impact theory, it fails for the same reason as the disparate treatment claim: Plaintiff does not allege an adverse employment action." (Doc. 18, p. 7).

Walmart's argument points to a weakness in Ms. Webb's amended complaint: she does not clearly articulate the basis of her Title VII claim. She alleges alternatively that Walmart does not provide "the same full benefit of available uniform options to women that are provided to men," (Doc. 19, p. 4, ¶ 21), that "[t]o the extent that Walmart's uniform policy is facially neutral, there is a substantial disparate impact on females . . . ," (Doc. 19, pp. 5–6, ¶ 27), that Walmart engages in "blatant sex discrimination . . . against its female [d]rivers," (Doc. 19, p. 6, ¶ 28; *see also* Doc. 19, p. 7, ¶¶ 36, 39), and that she and other female drivers, "because of the perceived stereotypes regarding the female gender" are "subjected to both a

subjectively and objectively hostile work environment, and to less-favorable working conditions as a result," (Doc. 19, p. 11, ¶ 58).[1]

Though Ms. Webb's legal theory under Title VII is unclear, the factual propositions on which her sex discrimination claim rests are not. Ms. Webb asserts that Walmart requires its male and female truck drivers to wear uniform pants or risk termination, that the nationwide retailer supplies to its male drivers as a benefit of employment men's uniform pants and pays to launder the pants weekly, and that Walmart does not supply women's uniform pants to its female truck drivers, causing her and other female drivers either to have to wear ill-fitting men's pants or incur the expense of buying and cleaning women's pants. Though Walmart is not averse to paying for men's pants for women to wear or to paying to clean men's pants that women wear, Walmart refuses to pay for women's pants for women to wear or to pay to clean women's pants. This, Ms. Webb asserts, is sex discrimination. In other words, Ms. Webb alleges that Walmart engages in "an employment practice which, on its face, discriminate[s] against individual employees because of their sex." *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 716 (1978).

In enacting Title VII, Congress "decided that classifications based on sex, like those based on national origin or race, are unlawful." *Manhart*, 435 U.S. at 709.

[1] Ms. Webb also mentions in passing that she is Caucasian. (Doc. 19, p. 1, ¶ 1). The allegation seems irrelevant to her Title VII claims which focus on gender-based discrimination.

Title VII prohibits an employer from discriminating against an individual on the basis of sex "with respect to [] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1). A "benefit, though not a contractual right of employment, may qualify as a 'privileg[e]' of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984). Where a benefit is implemented in a way that effectively produces a pay differential for members of a protected class—women, for example—Title VII prohibits the practice. *Manhart*, 435 U.S. at 709 ("[A] statute that was designed to make [gender] irrelevant in the employment market could not reasonably be construed to permit a take-home-pay differential based on a [gender] classification.") (internal citation omitted).[2] Accepting Ms. Webb's

---

[2] In *Manhart*, the employer, relying on actuarial tables which indicated that women as a group live longer than men, "required its female employees to make larger contributions to its pension fund than its male employees." *Manhart*, 435 U.S. at 704. The United States Supreme Court found that the practice discriminated against female employees based on their sex. The Supreme Court stated:

> An employment practice that requires 2,000 individuals to contribute more money into a fund than 10,000 other employees simply because each of them is a woman, rather than a man, is in direct conflict with both the language and the policy of [Title VII]. Such a practice does not pass the simple test of whether the evidence shows "treatment of a person in a manner which but for that person's sex would be different." It constitutes discrimination and is unlawful unless exempted by the Equal Pay Act of 1963 or some other affirmative justification.

435 U.S. 702, 711 (1978) (footnote omitted).

allegations as true, because of their sex, Walmart deprives Ms. Webb and her fellow female truck drivers of an employment benefit that male truck drivers receive, and Ms. Webb and other female drivers must incur expenses that lower their income in comparison to their male counterparts to avoid termination for failure to comply with Walmart's uniform policy.[3] In short, Ms. Webb alleges that Walmart "discriminate[s] against every individual [female truck driver] employed by the [company]." *Manhart*, 435 U.S. at 709. Per *Manhart*, this is disparate treatment discrimination, not disparate impact discrimination.[4]

Walmart argues that even if Ms. Webb has articulated a plausible theory of sex discrimination, her claim is not actionable because her "alleged expenses to obtain and launder pants are *de minimus*." (Doc. 18, p. 6). Walmart correctly points out that to be actionable, Walmart's uniform policy must cause a significant

---

[3] Were the shoe on the other foot, and Walmart paid only for women's pants (and for cleaning women's pants) for truck drivers, male drivers would be subject to discriminatory treatment based on sex, and male drivers' income would be depleted by money they would have to pay to buy pants that fit them and to launder the pants. If Walmart paid for only women's pants for male drivers and only men's pants for female drivers, Walmart would put male and female drivers at equal disadvantage (male and female drivers would have to pay for their own pants), so there would be no discrimination based on sex. In her amended complaint, Ms. Webb alleges that Walmart's uniform policy disadvantages only female drivers and that male drivers effectively earn more than female drivers because male drivers do not have out-of-pocket expenses for buying and cleaning uniform pants.

[4] *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) ("Under Title VII of the Civil Rights Act of 1964, an employer may be found liable for unlawful sex discrimination under any one of three discrete theories: pattern and practice discrimination, disparate treatment discrimination, or disparate impact discrimination. Both pattern and practice and disparate treatment claims require proof of discriminatory intent; disparate impact claims do not.").

discrepancy in benefits or income. (Doc. 18, p. 4) (citing *Webb-Edwards v. Orange Cty.*, 525 F.3d 1013, 1031 (11th Cir. 2008)); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (same); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385 (11th Cir. 1998).[5] Ms. Webb has not alleged the total amount she has had to pay for buy women's uniform pants and for laundering women's pants. She does allege that Walmart provides "multiple uniform options" to male drivers and cleans male drivers' uniform pants weekly. (Doc. 19, p. 6, ¶ 34). Viewing these allegations in the light most favorable to Ms. Webb, the expense she incurs to comply with Walmart's uniform policy may be more than *de minimus*; she may address this factual issue in a second amended complaint.

Walmart asserts that because Ms. Webb and other female drivers had the option "'to *either* suffer discomfort, *or* purchase and launder their own pants,'" (Doc. 22, p. 1) (quoting Doc. 19, p. 5) (italics in Doc. 22), Ms. Webb and her female colleagues who bought women's pants did so voluntarily, and the alternative of having to wear uncomfortable pants designed for men is not an adverse employment action, (Doc. 22, pp. 2–6; *see also* Doc. 18, pp. 3–7). In other words, Walmart considers the financial impact of the company's men's-pants-only policy a matter of

---

[5] In *Manhart*, the income disparity caused by the employer's disparate treatment of female employees was significant as "illustrated by the record of one woman whose contributions to the fund (including interest on the amount withheld each month) amounted to $18,171.40; a similarly situated male would have contributed only $12,843.53." *Manhart*, 435 U.S. at 705 n. 5.

choice for female drivers, not an unavoidable expense. But consider the other side of the coin—if Walmart paid only for women's pants, the uniform benefit would be no benefit at all for male drivers because most men cannot wear women's pants. The fact that a few women may be able to wear men's pants does not change the fact that, to comply with Walmart's uniform requirement, most female drivers must buy women's pants and bear expenses that male drivers do not incur.

The viability of Ms. Webb's state-law unjust enrichment claim seems to turn on the viability of her Title VII claim. If Title VII does not require Walmart to provide an equal uniform benefit to male and female truck drivers in the form of payment for women's pants for female drivers, then Walmart's willingness to pay for men's pants for female drivers defeats Ms. Webb's unjust enrichment claim. On the other hand, if Title VII mandates that, because Walmart requires truck drivers to wear uniform pants and because Walmart pays for men's pants for male drivers, Walmart also must pay for women's pants for female drivers, then to the extent that female drivers have had to bear a uniform expense that Walmart should have paid, Walmart may have been unjustly enriched. *Krutchen v. Zayo Bandwidth Northeast, LLC*, 2010 WL 760442, *12 (D. Minn. Mar. 1, 2010) ("With respect to the alleged failure to reimburse Krutchen for his business expenses, however, if Krutchen incurred expenses while performing his employment duties and his employer then failed to reimburse him for such work-related expenses, his employer may have been

unjustly enriched, although perhaps in a somewhat converse fashion compared to the usual scenario of a claimant having conferred a positive benefit upon another. In the present context, the employee would have incurred expenses that the employer should have born.").[6]

**IV.**

Consistent with the discussion above, Ms. Webb seems to be pursuing a Title VII disparate treatment claim based on sex discrimination and a related state-law claim for unjust enrichment. Ms. Webb has not alleged facts from which the Court may determine that the expenses Ms. Webb and other female Walmart truck drivers have incurred because of Walmart's uniform policy is more than *de minimus*. Within 14 days, Ms. Webb shall amend her complaint. If Ms. Webb intends to assert Title VII claims other than a disparate treatment claim, then Ms. Webb shall assert those

---

[6] "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Vill., LLC v. Welch,* 4 So. 3d 1095, 1098 (Ala. 2008) (citing *Am. Family Care, Inc. v. Fox,* 642 So. 2d 486, 488 (Ala. Civ. App. 1994)). The plaintiff must establish that:

> The defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud. The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.

*Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (quoting *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003)) (internal quotations, emphasis, and citations omitted).

alternative Title VII claims in separate counts. In her anticipated amended complaint, Ms. Webb shall provide additional information about the financial impact of Walmart's uniform policy for women, and Ms. Webb shall allege, to the extent that she has access to the information, the number of male truck drivers subject to Walmart's uniform policy.

The Clerk shall please TERM Doc. 18 as moot.

**DONE** and **ORDERED** this March 18, 2024.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE